UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MAURICE THOMAS                                          CIVIL ACTION

VERSUS                                                         NO. 13-688-JJB-SCR

CHIEF ORIAN GULOTTA, ET AL.

## RULING

This matter is before the Court on the Defendants Chief Orian Gulotta, Police Chief of the City of Plaquemine, and Officer V. Hebert's Motion (doc. 10) to Dismiss. The Plaintiff Maurice Thomas opposed the motion. (Doc. 12). Jurisdiction is based on 28 U.S.C. § 1331. Oral argument is not necessary. For the reasons provided herein, the Court **GRANTS IN PART AND DENIES IN PART** the defendants' Motion (doc. 10) to Dismiss.

### Background

In his amended complaint, the plaintiff alleges "that he was arrested, deemed guilty, kicked and beaten by defendant Plaquemine Police Office personnel on or about July 19, 2013." (Doc. 4, p. 2, ¶ 3). On that date, the plaintiff alleges that the police were searching for a man named Michael Williams, who had earlier been involved in an altercation with police officers. At 2:00 a.m., "plaintiff Maurice Thomas was awakened from his sleep by the sounds of his dogs in the back yard [sic] barking and alerting as to something or someone they detected." (Doc. 4, p. 2, ¶ 5). Unbeknownst to the plaintiff, the dogs had detected police officers located in the backyard of the plaintiff's next-door neighbor. The plaintiff emerged from his house to check on the situation, at which point he noticed the three individuals in his neighbor's backyard, but he did not know they were police officers. After threatening to call the police, Defendant Hebert and the

1

other officers ordered the plaintiff to get on the ground.[1] The plaintiff asserts that Hebert and the unknown officers began to punch, severely beat, and kick the plaintiff in the shoulder, ribs, and buttock area, all without any provocation. Plaintiff states that, during this beating, the officers repeatedly yelled profanities at him, as well as threatened to shoot him and his dog. Plaintiff also claims that there were several "red dots" on his chest—the laser sight marks from the officers' weapons. Subsequent to this beating, the officers commanded the plaintiff to crawl to the front of the house, while one of the officers positioned the barrel of a shotgun on the back of the plaintiff's head. After some length of time, the ordeal ended once an officer identified that the plaintiff was not the individual who the officers were trying to find. Nevertheless, one of the officers placed the plaintiff in the back of a police cruiser to run a warrant check. When that check returned nothing, the officers released the plaintiff from their custody.

As a result of this encounter, the plaintiff claims that he suffered serious injury from the officers' use of excessive and unreasonable force in violation of 42 U.S.C. § 1983. In addition to the above, the plaintiff alleges that the police chief and the sheriff "failed to properly screen, train and supervise [their] subordinate deputies and thereby endorsed and/or facilitated this type of activity, and failed to have the necessary steps in place to prevent this type of beating and treatment." (Doc. 4, p. 5, ¶ 24). Further, the plaintiff claims that the police chief failed to redress the wrong, and thereby "endorsed and ratified the actions of the deputies and staff." (Doc. 4, p. 6, ¶ 32).

Thereafter, Defendants Police Chief Orian Gulotta and Officer Hebert filed the pending motion to dismiss, seeking dismissal of the plaintiff's claims against them pursuant to Rule 12(b)(6). First, the defendants claim that the plaintiff failed to allege sufficient facts to prove an

---

[1] According to the complaint, the officers told the plaintiff to "get on the ground mother f***er! Get on the ground!" (Doc. 4, p. 3, ¶ 8).

individual-capacity claim, and even if the plaintiff pleaded sufficient facts, the relevant defendants are entitled to qualified immunity. Additionally, the defendants claim that the plaintiff failed to plead sufficient facts to assert an official-capacity claim.

## Analysis

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677−78 (2009). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint that pleads facts merely consistent with a defendant's liability "stops short of the line between possibility and plausibility." *Id.* at 557. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing the complaint, the court must accept "all well-pleaded facts as true and [view] them in a light most favorable" to the non-moving party. *Kramer v. Bisco*, 470 F. App'x 246, 246 (5th Cir. 2012) (per curiam). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its

face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

After wading through the convoluted and oftentimes jumbled pleadings in this case, the Court finds that the plaintiff has the following potentially viable claims against the defendants at issue here: (1) Section 1983 claims for use of excessive force in violation of the Fourth Amendment, (2) Section 1983 claims for false detention in violation of the Fourth Amendment, (3) official-capacity claim against Defendant Police Chief Orian Gulotta, and (4) analogous state law claims. Plaintiff attempts to argue that his First Amendment, Fifth Amendment, Sixth Amendment, and Eighth Amendment rights were violated through the defendants' actions. These arguments are unavailing. Initially, the plaintiff argues that the defendants violated his First Amendment right to defend his castle, and because "[p]rotected speech was met by the defendants with extreme and unnecessary violence," there would be a "chilling effect on the plaintiff's [r]ight to [f]ree speech guaranteed under the First Amendment." (Doc. 12, p. 15). The plaintiff also attempts to argue that the defendants set up a "court" in his backyard and "convicted" him, thereby implicating the Fifth, Sixth, and Eight Amendments. (Doc. 12, p. 15–16). However, there is no allegation that the plaintiff was ever arrested or presented before an actual court of law. The Court will not address these arguments, except to say that they do not rise to the level of cognizable claims under Section 1983.

Furthermore, the plaintiff avers that his 14th Amendment rights were violated, in that the officers, through intentional conduct, "altered the plaintiff's ability to proceed into court against

the known actors." (Doc. 12, p. 13). In his opposition, the plaintiff argues that the officers denied him his "property interest in proving his case . . . by the failure of documentation of this incident by the defendants." *Id.* After reviewing and analyzing the plaintiff's nebulous 14th Amendment claim and argument, the Court finds that the plaintiff cannot succeed on this claim as a matter of law. Therefore, the Court must now determine whether plaintiff pleaded sufficient facts to prove his remaining claims.

1.  Claims Against Police Chief Orian Gulotta

    a.  *Individual-Capacity Claim*

Turning first to the 42 U.S.C. § 1983 individual-capacity claims against Defendant Gulotta, the plaintiff claims that Defendant Gulotta is liable for failing to properly screen, train, and supervise his subordinate deputies. (Doc. 4, p. 5). Further, the plaintiff claims that Defendant Gulotta failed to implement the necessary steps to prevent this type of conduct. *Id.* Additionally, the plaintiff claims that Defendant Gulotta endorsed and ratified the actions of his deputies and staff by failing to discipline or otherwise redress the conduct. (Doc. 4, p. 6). The Fifth Circuit clearly provides that "supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "However, a supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 304. Here, it is clear that Defendant Gulotta was not personally involved in the alleged incident on the night of July 19, 2013. Therefore, to hold Defendant Gulotta liable in his individual capacity, the plaintiff must show that there is a sufficient causal connection between Defendant Gulotta's wrongful conduct and the constitutional violation. *See id.*

Upon review, the Court finds that the plaintiff fails to plead anything more than conclusory allegations that the officers were inadequately screened, trained, and supervised. These are nothing more than legal conclusions, and under the relevant standard, the Court does not have to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678. The plaintiff relies on mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citing *Twombly*, 550 U.S. at 555). Accordingly, the plaintiff fails to provide sufficient factual allegations to assert a Section 1983 individual-capacity claim against Defendant Gulotta based on supervisory liability.

Nevertheless, the plaintiff seeks to impose individual-capacity liability on Defendant Gulotta by asserting that he ratified and endorsed his subordinates' conduct. However, the only factual allegation is that Defendant Gulotta failed to discipline or redress the harm done, and thus, ratified and endorsed the conduct. (Doc. 4, p. 6, ¶ 32). Without something additional, the failure to discipline is not sufficient to rise to the level of a "ratification" or "endorsement." *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278–79 (5th Cir. 1992). There is no factual allegation that Defendant Gulotta did anything other than refuse to discipline or redress the harm. Accordingly, based on all of the above, the plaintiff did not plead sufficient facts to assert a Section 1983 individual-capacity claim against Defendant Gulotta.

b.  *Official-Capacity Claim*

Because Defendant Gulotta is currently the Police Chief of the Plaquemine Police Department, the plaintiff also asserts a 42 U.S.C. § 1983 claim against him in his official capacity as police chief. In *Kentucky v. Graham*, the Supreme Court provided that "[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." 473 U.S. 159, 165–66 (1985). By bringing suit against Defendant

Gulotta in his official capacity as police chief, the plaintiff is effectively seeking to impose liability on the Plaquemine Police Department under 42 U.S.C. § 1983.

Generally, to impose liability upon Defendant Gulotta, in his official capacity, the plaintiff must establish three elements: "a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)) (internal quotation marks omitted). In addition, the plaintiff attempts to raise a Section 1983 claim against Defendant Gulotta in his official capacity based on the failure to train the police office employees. As the Supreme Court has stated, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Only when this failure to train constitutes "deliberate indifference" can it rise to the level of a "policy or custom" actionable under Section 1983. *Id.*

Similar to above, the plaintiff relies on merely conclusory allegations and a recitation of legal elements in support of his official-capacity claims against Defendant Gulotta. As mentioned above, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint that pleads facts merely consistent with a defendant's liability "stops short of the line between possibility and plausibility." *Id.* at 557. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. (citing *Twombly*, 550 U.S. at 555). Accordingly, the Court finds that the plaintiff has failed to plead sufficient factual allegations against Defendant Gulotta in order to state either a Section 1983 individual- or official-capacity claim.

2.  Claims Against Officer V. Hebert

    a.  *Excessive Force Claim Under Fourth Amendment*

"To bring a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that she was seized." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). "Next she must show that she suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Id.* (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)).

Based on the amended complaint, it is clear that the plaintiff pleaded sufficient facts to assert an excessive force claim against Defendant V. Hebert. "An officer seizes a person when he, 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968)). In his complaint, the plaintiff asserts that V. Hebert yelled at the plaintiff to get on the ground, and then he and three other unknown officers began to collectively punch, severely beat, and kick the plaintiff. (Doc. 4, p. 3). During this beating, these defendants cursed the plaintiff out and threatened to shoot him. *Id.* Finally, the defendants ordered him to crawl to the front yard, while the officers placed a shotgun barrel on the back of his head. *Id.* These actions of Hebert and the other defendants, accepted as true, clearly constitute a seizure under the Fourth Amendment. Furthermore, the plaintiff alleges that he suffered severe injuries and may need surgery to correct the problems resulting solely from this alleged beating. Finally, accepting the complaint as true, the actions by the officers, including Hebert, would be a blatant example of "objectively unreasonable" force, as the officers issued a severe and unprovoked beating on an unarmed man. Accordingly, the Court finds that

the plaintiff has pleaded sufficient facts regarding his excessive force claim to overcome the Rule 12(b)(6) motion.

Nevertheless, Defendant Hebert claims that he is entitled to qualified immunity for his alleged actions. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "The qualified immunity inquiry . . . involves two prongs that must be answered affirmatively for an official to face liability: (1) whether the defendant's conduct violated a constitutional right, and (2) whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the violation." *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Glenn v. City of Tyler,* 242 F.3d 307, 312 (5th Cir. 2001) (quoting *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000)). The court "must evaluate an officer's use of force 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Poole v. City of Shreveport*, 691 F.3d 624, 627−28 (5th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Looking at the complaint, and taking its allegations as true at this stage, there is no reasonable argument that Defendant Hebert is entitled to qualified immunity for his actions. The

allegations paint a picture of Defendant Hebert and three other officers unleashing a vicious, unyielding, and otherwise malevolent beating on the plaintiff. If these allegations are true, the Court finds that it would be a clear violation of the plaintiff's Fourth Amendment right, and the conduct would be "objectively unreasonable in light of clearly established law at the time of the violation." *Hubert*, 609 F.3d at 761. Based on these allegations, it cannot be argued that a "reasonable officer at the scene" would have engaged in the same conduct. Taking the allegations as true, no reasonable person in the defendant's shoes "would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Glenn*, 242 F.3d at 312. Accordingly, the defendant's qualified immunity argument is unsuccessful at this stage of the litigation.

      b. *False Detention Under Fourth Amendment*

      In addition to the above, the plaintiff also claims that he was subjected to a false detention at the hands of Defendant Hebert. In support, the plaintiff claims that the officers put him in a police car and ran a warrant check on him, even after the officers knew he was not the relevant individual. Accordingly, the plaintiff's claim will be analyzed under the Fourth Amendment standards for unlawful detention, as the plaintiff was never actually placed under arrest. *See United States v. Campbell*, 178 F.3d 345, 349 (5th Cir. 1999).

      In the complaint, the plaintiff alleges that a "balding superior Plaquemine Police officer" ordered that the plaintiff be put in the police vehicle to run a warrant check on him. This "balding superior police officer" is made a defendant to the present litigation. There is no allegation that Defendant Hebert was involved in placing the plaintiff in the back of the police vehicle or in conducting the warrant check. Accordingly, the plaintiff failed to plead sufficient facts to assert a Section 1983 claim for false detention against Defendant Hebert.

c. *State Law Claims*

The defendants' only argument regarding the state law claims is that the Court should refuse to exercise supplemental jurisdiction. Nevertheless, as there are still remaining federal law claims, the Court retains supplemental jurisdiction over all state law claims at this time.

d. *Punitive Damages*

The defendants also seek to dismiss the plaintiff's claim for punitive damages under Section 1983. After review, and taking the factual allegations as true, the Court finds that the plaintiff pleaded sufficient facts to overcome the Rule 12(b)(6) motion to dismiss his claim for punitive damages. The officer's conduct in relentlessly beating and threatening to shoot the plaintiff, if true, would possible rise to the level of reckless or callous indifference to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 37 (1983).

e. *42 U.S.C. § 1988*

Finally, the defendants seek to dismiss the plaintiff's claim for attorney's fees under 42 U.S.C. § 1988. Section 1988 allows a "prevailing party" in a civil rights action to recover attorney's fees as part of his costs. 42 U.S.C. § 1988(b). As there is still a viable Section 1983 claim against Defendant Hebert, the Court will not dismiss the plaintiff's claim for attorney's fees pursuant to Section 1988.

3. Conspiracy Claim Under 42 U.S.C. § 1985

Plaintiff also asserts a conspiracy claim under 42 U.S.C. § 1985. Of relevance to this case, "Section 1985(3) prohibits conspiracies to deprive a person of equal protection of the laws or of equal privileges and immunities under the laws on the basis of race." *Jackson v. Biedenharn,* 429 F.App'x 369, 372 (5th Cir. 2011). *See also* 42 U.S.C. § 1985(3). "To state a claim under § 1985(3), a plaintiff must allege facts demonstrating (1) a conspiracy; (2) for the

purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States." *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (citing *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994)). "Additionally, the conspiracy must also have a racially based animus." *Id.* (citing *Hilliard*, 30 F.3d at 653).

For the reasons stated in the defendants' motion and reply, the Court finds that the plaintiff failed to plead sufficient facts to state a 42 U.S.C. § 1985 claim. All of the relevant members of this "conspiracy" were Plaquemine Police Office personnel. When discussing the Section 1985 claims in his opposition, the plaintiff only refers to Plaquemine police officers as being involved in the conspiracy. Accordingly, pursuant to the "intracorporate conspiracy doctrine," the plaintiff has failed to plead sufficient facts to assert a 42 U.S.C. § 1985 claim. *See Boyd v. Calcasieu Parish Sheriff's Office*, 2013 WL 1857448 (W.D. La. May 2, 2013).

### Conclusion

Therefore, the Court **GRANTS IN PART AND DENIES IN PART** the defendants' Motion (doc. 10) to Dismiss.

Additionally, the Court **GRANTS** the plaintiff leave to amend his complaint, as per his request. If the plaintiff decides to proceed, he is **ORDERED** to file any amended complaint within 15 days of the date of this Ruling.

Signed in Baton Rouge, Louisiana, on April 22, 2014.

_____

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**